UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DENTLER, Personal Representative of
the Estate of MATTHEW JOHN DENTLER,

    Plaintiff,

v.                                                                             Case No. 1:18-cv-323
                                                                             Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied claimant's application for disability insurance benefits (DIB).[1]

Claimant, Matthew John Dentler, alleged a disability onset date of December 15, 2008. PageID.293. Claimant identified his disabling conditions as "5 bypass heart surgery," high blood pressure, blood sugar, and tingling sensation in feet. PageID.285. Prior to applying for DIB, claimant completed the two years of college (welding and blueprint reading), and had past employment as senior manufacturing technician and general construction worker. PageID.297. An Administrative law judge (ALJ) reviewed claimant's application *de novo* and entered a written decision denying benefits on June 7, 2017. PageID.33-44. This decision, which was later

---

[1] The record reflects that the claimant passed away on January 24, 2019. *See* Suggestion of Death (ECF No. 14). The plaintiff in this lawsuit is now the personal representative of the claimant. For that reason, the Court will refer to the medical history and work history of the deceased "claimant," Matthew John Dentler.

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.     LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Claimant's application for disability benefits failed at the fifth step of the evaluation. At the first step, the ALJ found that claimant had not engaged in substantial gainful activity from his alleged onset date of December 15, 2008, through his date last insured of

3

September 30, 2015, with an exception for approximately three weeks in January and February 2013 (during which he worked as a welder). PageID.35.[2] At the second step, the ALJ found that through his date last insured (September 30, 2015), claimant had severe impairments of "coronary artery disease with a history of multi-vessel bypass grafting and diabetes mellitus with neuropathy." *Id*.

At the third step, the ALJ found that through his date last insured, claimant did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.36. The ALJ decided at the fourth step that:

> On or before September 30, 2015, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he could not climb ladders, ropes, or scaffolds; he could not balance, stoop, or crouch more than frequently; and he could not kneel, crawl, or climb stairs/ramps more than occasionally. He could not operate leg/foot controls; he could not work at unprotected heights or around dangerous moving machinery; and he could not operate motor vehicles more than frequently.

PageID.37. The ALJ also found that through the date last insured, claimant was unable to perform his past relevant work. PageID.42.

At the fifth step, the ALJ determined that claimant could perform a significant number of unskilled jobs at the medium exertional level in the national economy. PageID.43-44. Specifically, the ALJ found that claimant could perform the requirements of occupations in the national economy including order picker (64,000 jobs), packager (59,000 jobs), and production helper (58,000 jobs). PageID.PageID,43-44. Accordingly, the ALJ determined that claimant had not been under a disability, as defined in the Social Security Act, at any time from December 15, 2008 (his alleged onset date) through September 30, 2015 (the date last insured). PageID.44.

---

[2] While claimant's earning record included $106,800.00 during 2009, these wages represented a "buy-out" offered to senior employees at plaintiff's employer (American Axel & Manufacturing Inc.). PageID.35.

## III. DISCUSSION

Plaintiff set forth two issues on appeal.

**A. The Decision wrongly rejects the opinions of the doctors who treated Mr. Dentler and instead accepts the opinion of a non-physician, "single decision maker" interpreting the report of a doctor who spent a total of nine minutes with him. As result, Mr. Dentler is entitled to a remand to more properly assess the weight afforded to those opinions.**

Plaintiff contends that the ALJ improperly rejected the opinions of two treating physicians, Dr. Dennis Konzen and Dr. Nathan Averill, and accepted the opinion of an examining physician (Michael Geoghegan, D.O.). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404,1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1. Dr. Konzen

As an initial matter, the ALJ addressed plaintiff's limited interaction with the physicians in Michigan prior to his date last insured:

> The record shows that the claimant sought to establish care at Woodbridge/Three Rivers Family Practice in July 2015. D. Konzen, M.D. noted his [claimant's] report that he "predominately lives in South Carolina" and was "kind of back up to Michigan temporarily." The claimant stated that his blood sugar levels had been "running very high." Other than a very elevated blood pressure, for which Dr. Konzen added the beta blocker Metroprolol to his regimen, the claimant's exam was normal, with clear lungs and good heart sounds as well as a sinus rhythm noted. The claimant requested Dr. Konzen to complete a "disability form" for him and such was completed at that time (Exhibit 7f/pp.1, 2).

> When examined in late August 2015, P. Newhouse, M.D. noted that the claimant's blood pressure was still elevated and his prescription for Metoprolol was renewed with an increased dosage. Recently performed laboratory tests were reviewed, which showed his A1c level to measure 7.6. Dr. Newhouse stated that his diabetes was "not nearly as bad as he would (like) Dr. Konzen to believe." He considered the claimant's diabetes to have "fair control," and advised follow-up in three months (Exhibit 7f/p.3).

PageID.40.

The ALJ addressed the opinion evidence as follows.

> As for the opinion evidence, the undersigned accorded little weight to the opinion offered in July 2015 by D. Konzen, M.D. regarding his assessment of the claimant's physical limitations. He indicated that he considered the claimant able to lift 20 pounds frequently and carry 20 pounds occasionally and, in addition to

6

postural and environmental limitations, able to sit, stand, and walk, in combination, for less than a total of five hours in an eight-hour workday. He further indicated that he considered the claimant unable to sort, handle, and use paper/files (Exhibit 6f). The undersigned notes that Dr. Konzen completed this form at the claimant's request, noting his report that he was "sent by his cardiologist to have the form completed" (See Exhibit 7f/p.1).

The undersigned is not persuaded by this opinion for several reasons. Dr. Konzen did not reference any objective medical evidence to support his conclusions. His treatment note regarding the claimant's visit in July 2015 states that he had not examined the claimant since 2008, and despite having no laboratory testing to review, indicated that he considered the claimant's diabetes to have "terrible control;" this was later found to not be the case once lab testing was performed. There is no annotation within Dr. Konzen's treatment note from the claimant's July 2015 visit of any complaint regarding the use of his hands to warrant a limitation of their use. In addition, despite his statement within this treatment note that he essentially considered the claimant "disabled" due to severe heart disease and back pain (See Exhibit 7f/p. l), he had no medical evidence of a back impairment. There is no evidence that any diagnostic testing of his back had been performed since 2008, no treatment for back pain documented, and no indication that any spine-related work restrictions had been issued in the past. Furthermore, it was the claimant's testimony that Dr. Konzen did not perform a thorough exam at this visit, conceding that they primarily "just talked." It appears that Dr. Konzen based his opinion upon the claimant's subjective statements, and with no examination findings or objective diagnostic evidence to support his conclusions, such are of little probative value.

PageID.40-41.

Based on this record, the ALJ gave good reasons for giving little weight to Dr. Konzen's opinions. The doctor last examined plaintiff in 2008, about seven years prior to the date that the doctor filled out the disability form. The doctor provided no objective medical evidence to support his conclusions as set forth on the fill-in-the-blank form. As this Court has previously stated, "ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation." *Laporte v. Commissioner of Social Security*, No. 1:15-cv-456, 2016 WL 5349072 at *7 (W.D. Mich. Sept. 26, 2016). Accordingly, plaintiff's claim of error with respect to Dr. Konzen's opinion is denied.

### 2. Dr. Averill

The ALJ addressed Dr. Averill's opinion as follows:

The undersigned notes that the opinion regarding the claimant's physical limitations from Dr. Averill was offered in a sworn statement in September 2016, almost one year after the date the claimant last retained insured status. He stated that he considered the claimant limited to being on his feet, standing or walking, for a total of one hour during an eight-hour workday and limited to lifting 20 pounds. Dr. Averill indicated that he considered these limitations to be relevant as of the first date he examined the claimant in September 2014 because the claimant exhibited diminished sensation in his feet consistent with diabetic peripheral neuropathy at that time and "has significant marked (coronary artery) disease which is symptomatic" (Exhibit 9f).

However, the undersigned notes that while the claimant reported experiencing recent intermittent chest pain, shortness of breath, and fatigue at his initial exam with Dr. Averill in late September 2014 (Exhibit 13f/p.17), he reported improvement of these symptoms at his next exam the following month. He also considered the numbness and pain in his feet to be "much improved" since he started using Gabapentin/Neurontin; he additionally reported an improved mood since he began using Sertraline/Zoloft (Exhibit 13f/p.14), all of which had been prescribed by Dr. Averill at his initial visit. The claimant denied medication side-effects as well as hypertensive symptoms at all subsequent exams, and he also denied hypoglycemic episodes, even when he admitted to noncompliance with his hypertensive medication(s) and diabetic dietary restrictions (Exhibit 13f/pp.5, 10, 14). The undersigned notes that after the claimant's initial exam with Dr. Averill in September 2014, there are no further reports of any cardiac symptoms annotated prior to September 30, 2015. In fact, only one visit with Dr. Averill is documented during the entire year of 2015 (Exhibit 13 f/pp.10-13). There is no evidence that symptoms of the claimant's heart disease required emergent treatment during that year and, therefore, the undersigned is not persuaded that the claimant's heart disease was "significantly symptomatic," as noted within Dr. Averill's sworn statement, during the period from September 2014 through September 2015.

In addition, while Dr. Averill indicated that his assessment of the claimant's physical limitations was based, in part, upon the peripheral neuropathy in his feet evident at his exam in September 2014, the claimant's exam by Dr. Geoghegan only two months later revealed diminished sensation in his toes only, a normal gait, and no difficulties with squatting, hopping, and performing a heel-and-toe walk. The undersigned further notes that Dr. Geoghegan noted the claimant's denial of any recent cardiac-related chest pain (Exhibit 5f). Dr. Averill's assessment of the claimant's physical limitations appears to rely heavily upon the claimant's subjective reports and is not consistent with his treatment notes or the exam findings by Dr. Geoghegan. Therefore, little weight was accorded Dr. Averill's opinion (Exhibit 9f).

PageID.41-42. Based on this record, the ALJ gave good reasons for his decision to assign little weight to the Dr. Averill's opinion. The ALJ's evaluation of Dr. Averill's opinion is supported by substantial evidence in the medical record. Accordingly, plaintiff's claim of error with respect to Dr. Averill's opinion is denied.

>  **B. The Decision failed to consider the opinion of the treating doctor submitted after the hearing, but relating to the period of disability at issue – up through September 30, 2015, his date last insured for Social Security Disability Benefits.**

Plaintiff contends that the Commissioner failed to consider a new medical opinion by David Makowski, D.O. The ALJ never saw this opinion, which was prepared on January 3, 2018, almost seven months after the ALJ entered his decision on June 7, 2017. PageID.93-95. Plaintiff's counsel submitted this opinion to the Appeals Counsel shortly before the Council denied plaintiff's request for review on February 6, 2018. PageID.22-27. While plaintiff apparently wants a sentence-six remand, he does not address the legal standard other than to state that the "the Appeals Council rejected this opinion outright without making a determination of good cause or materiality of the evidence." Plaintiff's Brief at PageID.719.

When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v.*

9

*Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

Dr. Makowski's letter was dated January 3, 2018, almost seven months after the ALJ entered his decision denying benefits. PageID.44. Based on this date, it was not relevant to plaintiff's DIB claim which involved his condition between December 15, 2008 and September 30, 2015. PageID.44. To remedy this obvious problem, Dr. Makowski sought to connect his 2018 report to Dr. Konzen's July 2015 report. Dr. Makowski stated that he took over plaintiff's care in August 2016, upon the retirement of Dr. Konzen. PageID.94. Although Dr. Makowski had no personal knowledge of plaintiff's condition on or before the date last insured of September 30, 2015, he concurred with the limitations set forth by Dr. Konzen on July 22, 2015. *Id.*

Plaintiff is not entitled to a sentence-six remand. First, plaintiff has not presented good cause for the late production of this evidence. Contrary to plaintiff's contention, he cannot demonstrate good cause simply because Dr. Makowski's letter "was not in existence" prior to the ALJ's decision. *See Courter*, 479 Fed. Appx. at 725. Next, plaintiff has presented no evidence of any obstacles that prevented him from obtaining an opinion from Dr. Makowski prior to the issuance of the ALJ's decision. A claimant's failure to obtain otherwise-available medical evidence before the hearing does not constitute the "good cause" under 42 U.S.C. § 405(g). *See Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir.1986) (finding that the claimant did not have good cause for failing to obtain additional medical tests in advance of his administrative hearing before the ALJ). Furthermore, Dr. Makowski's letter was generated after the denial of his claim, designed to rebut the ALJ's decision, and submitted to obtain relief from the Appeals Council. *See* Plaintiff's Brief at PageID.718 ("Dr. Makowski's new statement answers the objections the Decision had to the earlier statements of the other treating sources."). Under such circumstances, good cause does not exist for plaintiff's failure to present this new evidence to the ALJ. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would be meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position).

Second, plaintiff has failed to demonstrate materiality. As discussed, Dr. Makowski did not treat plaintiff during the relevant time period and had no personal knowledge of plaintiff's condition prior to August 2016. Nevertheless, Dr. Makowski expressed the opinion that plaintiff's conditions "would have been at least as limiting as set forth in Dr. Konzen's July 22, 2015 [evaluation], and that his impairments have persisted and worsened to today's date." PageID.94. Dr. Makowski could testify regarding plaintiff's condition as it existed in August

2016. However, to the extent Dr. Makowski re-affirmed Dr. Konzen's 2015 opinion, he was acting as an expert who rendered an opinion based upon a review plaintiff's medical records. *See Sizemore*, 865 F.2d at 712 ("Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began."). Finally, Dr. Makowski expressed his belief that plaintiff "could not engage in full-time work, maintain a set schedule, demonstrate reliability, or otherwise work at any exertional level for 8 hours a day 5 days a week, and those impairments would have been present going back to at least July 22, 2015." PageID.95. The ALJ would not be bound by this belief. It is well established that the Commissioner, not the doctor, makes the determination as to whether a claimant is unemployable due to a disability. *See* 20 C.F.R. § 404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). For all of these reasons, plaintiff's request for a sentence-six remand is denied.

IV. **CONCLUSION**

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 24, 2019 /s/ Ray Kent
United States Magistrate Judge